UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CARLOS LEWIS,

        Plaintiff,                            Hon. Janet T. Neff

v.                                             Case No. 1:14-CV-596

KYLE PLOEHN,

        Defendant.
_____/

### REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Judgment. (Dkt. #16). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted** and this action **dismissed**.

### BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). While incarcerated at the Carson City Correctional Facility, Plaintiff was diagnosed with carpal tunnel syndrome in his right hand. Plaintiff was later transferred to the Lakeland Correctional Facility (LCF). After his arrival at LCF, Plaintiff was examined by Physician's Assistant Kyle Ploehn who informed Plaintiff that he did not suffer from carpal tunnel syndrome. Plaintiff was later informed by an "off-site specialist" that he did, in fact, suffer from carpal tunnel syndrome. The next day, Plaintiff was again examined by Ploehn who reiterated to Plaintiff that he was not experiencing carpal tunnel syndrome. Plaintiff initiated the present action alleging that Ploehn misdiagnosed his medical condition and failed

to provide him with appropriate medical treatment in violation of his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment.[1] Plaintiff requests monetary and injunctive relief. Defendant Ploehn now moves for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary

---

[1] Plaintiff's right to be free from cruel and unusual punishment is protected by the Eighth Amendment whereas the Fourteenth Amendment's analogous protections apply to pretrial detainees. *See, e.g., Bradley v. City of Ferndale*, 148 Fed. Appx. 499, 506 (6th Cir., Sept. 8, 2005). Thus, Plaintiff's Fourteenth Amendment claims for denial of medical treatment must be dismissed.

judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United*

*States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison*

*v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Rouster v. County of Saginaw*, 749 F.3d 437, 447 (6th Cir. 2014) ("a plaintiff alleging deliberate indifference must show more than negligence of the misdiagnosis of an ailment"); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"). A review of the evidence in this matter makes clear that Defendant is entitled to relief.

In 2013, prior to transferring to the Lakeland Correctional Facility, Plaintiff was diagnosed with carpal tunnel syndrome of the right hand for which he was provided medication and a wrist brace. (Dkt. #21 at Page ID# 197-207). On September 9, 2013, Plaintiff was first examined by Defendant Ploehn. (Dkt. #21 at Page ID# 208-10). Plaintiff reported that he was continuing to wear his wrist brace. (Dkt. #21 at Page ID# 208). Plaintiff exhibited "normal" strength in both wrists. (Dkt. #21 at Page ID# 209). Phalen's test[2] and Tinel's sign[3] were negative in both wrists. (Dkt. #21 at Page ID# 210). Ploehn concluded that Plaintiff's symptoms "do not suggest CTS [carpal tunnel syndrome], [but are] more likely right ulnar nerve compression." (Dkt. #21 at Page ID# 210). Ploehn modified Plaintiff's medication regimen. (Dkt. #21 at Page ID# 210).

On October 13, 2013, Plaintiff was examined by a nurse. (Dkt. #21 at Page ID# 211-12). Plaintiff reported that his right hand "seems to be worse." (Dkt. #21 at Page ID# 211). Plaintiff was instructed to apply moist heat to his wrist, use pain medication as needed, and position his hand in a neutral position. (Dkt. #21 at Page ID# 212).

On October 15, 2013, Plaintiff was examined by Dr. Bhamini Sudhir. (Dkt. #18 at Page ID# 143-46). An examination of Plaintiff's right hand revealed atrophy and diminished sensation and grip strength. (Dkt. #18 at Page ID# 143). Dr. Sudhir concluded that Plaintiff was experiencing ulnar neuropathy not carpal tunnel syndrome. (Dkt. #18 at Page ID# 146). The doctor recommended that

---

[2] Phalen's test is performed to determine the presence of carpal tunnel syndrome. *See* Tinel's and Phalen's Tests, available at http://www.carpal-tunnel-symptoms.com/tinels-and-phalens-tests.html (last visited on May 7, 2015). Phalen's test is performed by bending the patient's wrists downwards as far as they will comfortably go and pushing the backs of the hands together. The patient should hold this position for one minute. A positive test is indicated by numbness or tingling along the median nerve distribution. *Id.*

[3] Tinel's test (or Tinel's sign) is performed to determine the presence of carpal tunnel syndrome. *See* Tinel's and Phalen's Tests, available at http://www.carpal-tunnel-symptoms.com/tinels-and-phalens-tests.html (last visited on May 7, 2015). Tinel's test is performed by tapping over the carpal tunnel area of the wrist with the palm up. A positive test causes tingling or paresthesia, and sometimes even a "shock type sensation," in the median nerve distribution. *Id.*

Plaintiff participate in an EMG examination. (Dkt. #18 at Page ID# 146). Approval for this procedure was provided on October 30, 2013. (Dkt. #18 at Page ID# 151-52).

On November 4, 2013, Plaintiff was examined by Defendant Ploehn. (Dkt. #18 at Page ID# 155-57). An examination of Plaintiff's right hand revealed decreased strength. (Dkt. #16, Exhibit A; Dkt. #18 at Page ID# 156). Ploehn surmised that Plaintiff was suffering from an ulnar nerve injury. (Dkt. #16, Exhibit A; Dkt. #18 at Page ID# 156). Ploehn ordered x-rays of Plaintiff's spine and neck to determine whether Plaintiff was experiencing any spinal abnormality that was contributing to his upper extremity impairment. (Dkt. #16, Exhibit A; Dkt. #18 at Page ID# 157). X-rays of Plaintiff's neck and cervical spine, taken November 8, 2013, revealed no significant abnormality. (Dkt. #21 at Page ID# 214).

On November 14, 2013, Plaintiff participated in an EMG examination the results of which indicated he was suffering from carpal tunnel syndrome and cervical radiculopathy. (Dkt. #21 at Page ID# 215-17). This examination was performed by Dr. Dennis Dafnis, a consulting physician not affiliated with the MDOC. (Dkt. #16, Exhibit A; Dkt. #21 at Page ID# 215-17). Dr. Dafnis did not immediately provide Plaintiff or prison officials with any written documentation articulating or describing these test results. (Dkt. #16, Exhibit A). Plaintiff was next examined by Defendant Ploehn on November 28, 2013. (Dkt. #21 at Page ID# 218-21). While Ploehn reviewed with Plaintiff the results of his recent x-rays, discussion of Plaintiff's recent EMG examination was not possible because Dr. Dafnis' treatment notes had not yet been provided to prison officials. (Dkt. #16, Exhibit A; Dkt. #21 at Page ID# 218-21). An examination of Plaintiff's upper extremities was unremarkable and Phalen's

test and Tinel's sign were negative in both wrists. (Dkt. #21 at Page ID# 218-21). Defendant Plohn diagnosed Plaintiff with an ulnar nerve injury for which he prescribed Mobic.[4]

Plaintiff was next examined by Defendant Ploehn on December 2, 2013. (Dkt. #18 at Page ID# 166-68). Ploehn informed Plaintiff that Dr. Dafnis' treatment notes had still not been provided to prison officials. (Dkt. #16, Exhibit A; Dkt. #18 at Page ID# 167). An examination of Plaintiff's upper extremities was unremarkable and Phalen's test and Tinel's sign were negative in both wrists. (Dkt. #18 at Page ID# 167). Ploehn continued Plaintiff's Mobic prescription. (Dkt. #18 at Page ID# 167). Defendant Ploehn did not treat Plaintiff after this date. (Dkt. #16, Exhibit A).

In sum, Ploehn (and others), based upon the results of examinations and testing, concluded that Plaintiff suffered an ulnar nerve injury whereas other care providers, including Dr. Dafnis, concluded that Plaintiff was experiencing carpal tunnel syndrome. As Defendant Ploehn asserts, however, the treatment for both conditions, at least as regards conservative measures, is largely the same. (Dkt. #16, Exhibit A). Specifically, both conditions are treated with rest, medication, and splinting/bracing which Ploehn prescribed for Plaintiff. (Dkt. #16, Exhibit A). Thus, at most, Plaintiff can establish that Defendant Ploehn misdiagnosed his ailment or engaged in malpractice. As previously noted, however, neither circumstance violates the Eighth Amendment. Accordingly, the undersigned recommends that Defendant's motion be granted as to Plaintiff's Eighth Amendment claims.

---

[4] Mobic is a nonsteroidal anti-inflammatory drug used to treat pain, swelling, and stiffness of the joints. *See* Mobic, available at http://www.webmd.com/drugs/2/drug-18173/mobic-oral/details (last visited on May 11, 2015).

**CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendant's Motion for Summary Judgment, (Dkt. #16), be **granted** and this action **dismissed**.  The undersigned further recommends that appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  May 14, 2015

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge